RECEIVED
JUL 1 9 2005
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| AUDREY BUSFIELD | CIVIL ACTION NO. 03-1235 |
| VERSUS | JUDGE DOHERTY |
| UNITED STATES OF AMERICA | MAGISTRATE JUDGE HILL |

## MEMORANDUM RULING

Pending before this Court is a Motion for New Trial filed on behalf of the defendant, the United States of America, arguing that this Court's award of compensatory damages to Ms. Busfield was (a) unsupported by the evidence and (b) motivated by a desire to punish the United States. The only remedy the Government seeks is a new trial on damages; it has not asked for remittitur. The plaintiff opposes the motion. All briefing has now been completed. While oral argument is scheduled to be heard on July 22, 2005, this Court finds that the motion does not present issues on which oral argument might be helpful and, therefore, issues its ruling on the merits of the motion and supporting briefs without benefit of oral argument.

The plaintiff, Audrey Busfield, underwent a trichloracetic acid "chemical peel" to her face and neck on or about October 8, 1996 at the Veterans Administration Hospital in Durham, North Carolina. As a result of the manner in which the chemical peel was performed, she sustained severe burns to the skin of her face and neck. These burns were caused by malpractice on the part of the physician who performed the peel as well as the Veterans Administration for failure to supervise and properly train, the physician who committed malpractice.

Once the burns had healed, Ms. Busfield developed substantial scars on her face and neck. The most significant scar is one along the right side of her neck which appears to have attached to the muscles beneath her skin. The scar tissue is contracting and becoming shorter and, as a result, is pulling her head down and toward her right shoulder. As a result of the extensive scarring, she also, has lost sensation and feeling to varying degrees over extensive portions of her face and neck and has debilitating hyper-sensitivity to heat and sun over extensive portions of her face and neck. She has undergone multiple medical surgical procedures in an effort to correct the problem, which has acted only to create additional scarring and, unless she undergoes substantial additional medical treatment (and unless such treatment is successful, unlike *all* of the prior attempts to remedy this condition), the scarring will continue to contract, her head will become ever-more tilted toward the right side, and the physical consequences of the VA's negligence and medical malpractice will continue to worsen. The loss of sensation and feeling, and the hypersensitivity, as well as some disfigurement is permanent. Ms. Busfield's burn, subsequent treatment, and resultant physical damage have caused and continue to cause Ms. Busfield extensive and ongoing physical pain and shall for the foreseeable future. As a result of her experiences at the VA and her resultant injury, Ms. Busfield also, has suffered and continues to suffer from extensive, serious, and debilitating psychological trauma and damage. Ms. Busfield's life as she knew it has been and will be forever altered.

Ms. Busfield filed a claim against the United States asserting medical malpractice and negligence claims. These claims were tried to the bench over the course of nine (9) days between February 23, 2005 and March 23, 2005. After both the plaintiff and defendant completed the presentation of their evidence, this Court awarded Ms. Busfield $2.8 Million in compensatory

damages and $703,625.40 in special medical damages. The defendant now moves for a new trial on the question of damages alone, asking the Court to set aside the $2.8 Million award of compensatory damages by granting a new trial.

A court has extensive discretion to grant relief in the form of a new trial. "A new trial may be granted to all or any of the parties and on all or part of the issues . . . (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States." Fed. R. Civ. Proc. 59(a).[1] Neither Rule 59(a)(2), nor any of the very limited jurisprudence discussing it, provide clear guidance of the kinds of reasons for which rehearings have traditionally been granted in suits in equity. However, this Court's independent research has revealed that, under remarkably similar procedural circumstances to those presented in this case, the Fifth Circuit has found that the arguments presented here are the type a court may consider under Rule 59(a)(2) of the Federal Rules of Civil Procedure. *See* Wheat v. United States, 860 F.2d 1256 (5th Cir. 1988).

In the Fifth Circuit, a motion for new trial on the basis of excessive damages is directed at the emotional state of the finder of fact: if prejudice or passion played a role in the determination of damages, a new trial must be granted. "In determining whether a new trial or remittitur is the appropriate remedy, this Court has held that when a jury verdict results from passion or prejudice,

---

[1] While the Government has acknowledged that the controlling standard of review for determining whether or not to grant a motion for new trial is the one established by federal law – *see* Memorandum in Support of Motion for New Trial, at 4 – its brief contains an extended discussion of the analysis of new trial motions adopted by the state courts of North Carolina. The Government's brief does not contain explanation of the purpose for citing North Carolina's procedural rules in this context. In the absence of any enlightenment as to the Government's intent with regard to the role of North Carolina's procedural rules in this case, that portion of the Government's argument is not found persuasive.

a new trial, not remittitur is the proper remedy. . . . Damage awards which are merely excessive or so large as to appear contrary to right reason, however, are subject to remittitur, not a new trial." Brunnemann v. Terra International, Inc., 975 F.2d 175, 178 (5th Cir. 1992) (citations omitted).[2] Given the Fifth Circuit's distinction between the role of a new trial motion and a remittitur request, the Government's choice of procedural vehicle will have a limiting effect on the arguments available to it here. Specifically, the Court notes that the Government has not sought remittitur herein, but seeks only a new trial. In light of Brunnemann and Westbrook, the Government's choice not to seek remittitur has the result of precluding it from arguing that the damages are excessive *per se* – *i.e.* that, accepting as true the facts as the Court has found them, the damages awarded are too high when compared to analogous damage awards approved by the Fifth Circuit and/or the North Carolina supreme court. Thus, the arguments available to the Government in this motion are limited to those addressing the Court's findings and its motivations.

"Courts grant a new trial when 'it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done.' In granting a new trial, the district court weighs all of the evidence, and it need not view it in the light most favorable to the nonmoving party. A new trial is warranted if the evidence is against the great, and not merely the greater, weight of the evidence." Laxton v. GAP, Inc., 333 F.3d 572, 586 (5th Cir. 2003) (citations omitted).[3] Thus, in

---

[2] *See also* Westbrook v. General Tire and Rubber Company, 754 F.2d 1233, 1241 (5th Cir. 1985) ("When a jury verdict results from passion or prejudice, a new trial is the proper remedy rather than remittitur. Although decisions have deviated from this rule, the better approach is to require a new trial on any issue infected by passion and prejudice and employ remittitur for those verdicts which are excessive, that is, so large as to be contrary to right reason.") (citations omitted).

[3] The Court notes that, while the Laxton opinion indicates that the evidence need not be viewed in the light most favorable to the nonmoving party when considering a motion for new trial, other Fifth Circuit jurisprudence suggests otherwise. "A damages award cannot stand when the only evidence to support it is speculative or purely conjectural. . . . we are bound to consider the evidence and all

order to prevail on its motion, the Government must demonstrate only that the *great weight* of the evidence requires a new trial on compensatory damages.

The Government's first challenge is to the sufficiency of the evidence supporting the damage award (or, stated alternatively, whether this Court's ruling was improperly motivated by "extreme passion and prejudice" rather than the evidence in the record). The "great weight of the evidence" standard necessarily incorporates a review of the evidence and comparison of the evidence supporting Ms. Busfield's claims with that which opposes her claims. As such a review and comparison necessarily precedes any ruling on the plaintiff's claims, this Court notes it has already conducted a painstaking review of all the evidence presented, both favoring and disfavoring Ms. Busfield's claims. The review – and this Court's conclusions – are set forth in an 87-page transcript of this Court's ruling issued on March 23, 2005. In its ruling, this Court provided an extensive, detailed description of the evidence concerning Ms. Busfield's physical and psychological pain and suffering and permanent injury, as well as all evidence which had been offered by the Government, and provided a thorough explanation for why certain evidence was found to be persuasive and other evidence not persuasive.

In order to demonstrate that it is entitled to the relief it seeks, the Government bears the burden of proving that this Court has erred – *i.e.*, that the "great weight" of the evidence is in *its* favor rather than in favor of Ms. Busfield. However, the Government has provided no evidence or

---

reasonable inferences therefrom in the light most favorable to the jury verdict." Haley v. Pan American World Airways, Inc., 746 F.2d 311, 316-17 (5th Cir. 1984). Again, neither party has addressed the applicable standard of review and analysis, thus depriving the Court of assistance in resolving this apparent contradiction. However, the Laxton burden (less stringent for the movant because it does not contain a presumption in favor of the Court's ruling) will be used for purposes of the current motion, as the Government cannot meet that lesser standard, and thus, this Court need not address the more onerous standard.

made any further argument to support this burden. The briefing does not detail the evidence presented at trial, nor does it contain an analysis of that evidence in order to demonstrate that the "great weight" of the evidence is contrary to this Court's findings. Rather, the Government simply reiterates the themes it argued at trial: Ms. Busfield's testimony is not credible, she failed to mitigate her damages, she wasn't really damaged psychologically, her physical injuries are not very serious, etc; in effect, that Ms. Busfield's injuries are not as significant as she argues and should not have been as great as they were. In other words, had Ms. Busfield not been who she was, her injuries might not have been so great. However, much to the Government's dismay, Ms. Busfield was who and how she was when the Government's action caused actual damage. The evidence was undisputed any person would have sustained injury as a result of the Government's negligent actions. However, the Government argues Ms. Busfield's injuries were not what she claimed, and/or should not have occurred but for her actions and her preexisting state. In other words, the Government argues, in part, Ms. Busfield caused in part her damages and also, was unique and that uniqueness played a role in her damages and thus the Government should not be liable for her damages. However, the jurisprudence is clear, once it was determined any individual would have sustained damaged - both psychological and physical - as a result of the Government's malpractice, the mere fact that Ms. Busfield's injury and reaction were heightened does not absolve the Government of its liability for those heightened results. Had the Government's actions been of a nature *not* to cause damage to anyone, then the Government's argument might be better founded. However, that is not the case. The Government's negligence would have caused injury to one other than one similar to Ms. Busfield, thus, the Government cannot now decry the results of its negligence because Ms.

Busfield was injured as she was.[4]

Importantly, the Government's brief contains no attempt to address this Court's rulings rejecting those, and other, theories, which were made by the Government at trial and were rejected by the Court with full explanation and reasons given. In seeking a new trial, it is simply not enough to re-state arguments that were presented at trial without demonstrating why the Court's ruling, rejecting those very same arguments, was wrong.[5]

The Government has in no way addressed the extensive reasons given by the Court for the Court's findings as to the extent, nature, severity and duration of Ms. Busfield's pain and suffering and physical and psychological damage – which continued through the time of the trial and, quite possibly, will continue for the remainder of her life. There is no mention of the breadth of undisputed evidence as to the vast extent and extreme nature of Ms. Busfield's burns and resultant permanent physical injuries and damages, nor of the extreme physical and psychological pain she

---

[4] *See* the discussion of relevant jurisprudence in Footnote 5.

[5] For instance, the Government notes that if Ms. Busfield had had a different approach to her injuries – which is to say, that if her psychological makeup were different – the impact of her injuries would not have been so great. This point is well-taken; indeed, this Court reached a somewhat similar conclusion in its ruling. However, as this Court also noted in its ruling, the point is of no moment. North Carolina law clearly establishes that, once a tortfeasor commits a negligent act (or, as in this case, malpractice), that tortfeasor is responsible for all actual damages that flow from that act – the so-called "eggshell plaintiff" rule. *See* Transcript of February 23, 2005 (containing this Court's rulings on various legal issues prior to the commencement of trial, including citations to Heath v. Kirkman, 82 S.E.2d 104 (1954); Morrison v. Stallworth, 326 S.E.2d 387 (N.C.App. 1985); Lockwood v. McCaskill, 262 N.C. 663, 138 S.E.2d 541, 546 (N.C. 1964); Lee v. Regan, 47 N.C.App. 544, 267 S.E.2d 909, 912-13 (1980)). This rule is common to tort jurisprudence throughout the United States and it determines that the United States cannot avoid compensating its tort victims simply because they are not of an approved psychological makeup. The Government's argument does not address these legal principles nor does it acknowledge their impact. Moreover, the Government has made no attempt to demonstrate why this Court's ruling was in error. The Government did not prove at trial that Ms. Busfield was deliberately exacerbating her emotional and/or psychological difficulties, nor has this Court found any evidence suggesting that she did. Drs. Lowe and Blackburn and Black amply described the psychological processes which contributed to, and resulted in, Ms. Busfield's experience of her injuries, and her resultant pain, suffering, and mental anguish, and this Court has expressly found that those descriptions are both clear and adequate.

endured for the months while her skin healed from the severe burns that resulted from the negligence and malpractice. There is no mention of the numerous medical procedures Ms. Busfield has endured, thus far, in an effort to repair the damage, nor the further medical procedures which will be necessary if she is to have any relief from the constant pull and tilt of her head toward her right shoulder as a result of the contracting scar tissue. No mention was made of the permanent loss of feeling and sensation Ms. Busfield has experienced on a large area of her face and neck, nor of her hypersensitivity to the least amount of heat and to the sun and the resultant limitations these conditions force upon her day-to-day life over and above those forced upon her by the constant tilt of her head and inability to fully control the liquids in her mouth. By ignoring the evidence, as well as the Court's rulings and analysis – the Government has not included in its brief any citation to this Court's 87-page ruling or its reasoning – the Government has failed to identify any basis for this Court to look anew at those rulings, test them against the evidence and/or the jurisprudence, or in any way determine that a new trial might be appropriate.

For the reasons fully set forth in this Court's 87-page oral opinion issued from the bench, Ms. Busfield's claims (and the damages award) are well-supported by extensive evidence presented at trial. Ms. Busfield has been permanently disfigured, sustained permanent injury to her face and neck tissue, sustained permanent loss of feeling and sensation to much of her face and neck, suffered a loss of her ability to control fluids in her mouth, suffered an increasing constriction of the skin and neck causing a painful and constant pull resulting in a severe drawing of the skin and of her head toward her shoulder - a "tilt" of her head, suffers an increased risk of developing skin cancer on the effected area and has suffered extensive pain and suffering both as a result of her injury and as a result of the multiple surgeries and medical procedures she has undergone in the hope of alleviating

the pain and the damage inflicted. Ms. Busfield has suffered severe physical pain and suffering, and will have to live with certain and substantial limitations on her ability to go about day-to-day living including an inability to wear makeup or endure exposure, even the small amounts of heat encountered by cooking. Ms. Busfield has sustained as well, severe, extreme and ongoing psychological injury. She see herself as a "freak" unworthy of love or social interaction. She has undergone and continues to undergo intensive psychological counseling and treatment. Such treatment will be required for an extensive period extending well into the future. In short, Ms. Busfield's life as she knew it has been forever altered and cannot be returned to the condition - whatever that might have been - which preexisted the Government's negligence and malpractice.

The Government has not demonstrated that this Court's conclusions are against the great weight of the evidence, nor even that there is substantive evidence contrary to this Court's findings of fact, conclusions of law, and award of damages. The Government's argument concerning the sufficiency of the evidence in the record is in no way persuasive.

The second argument the Government makes is that the compensatory damages awarded by this Court to Ms. Busfield, while this Court has expressly denominated them "compensatory" are, in reality, punitive in nature. It is undisputed punitive damages may not be awarded against the United States. Moreover, damages awarded above and beyond those proven at trial are subject to being designated as punitive in nature and, therefore, clearly are impermissible. Once again, however, the Government has not provided this Court with argument or citation to applicable jurisprudential standards to assist this Court in evaluating whether, as it suggests, the damages awarded herein are prohibited.

This Court's independent research of Fifth Circuit jurisprudence has yielded some guidance on this issue. It seems that the argument made by the United States in Wheat v. United States is applicable here; that argument held no sway, even though certain damages awards in that case were found to have been excessive and, therefore, subject to remittitur.

> The United States correctly states that punitive damages are prohibited in FTCA actions and that damages exceeding the plaintiff's actual loss are considered punitive under the FTCA. Asserting that the district court's damage awards are excessive, the United States concludes they are punitive. We disagree. . . . [T]he district court's unpublished opinion makes clear that it did not use the damage awards as punitive measures. [The district court *did not* disguise its disgust with the behavior of the physicians who treated Mrs. Wheat, [*i.e.*, VA physicians who did not discover that she had cervical cancer for more than 3 ½ years and who told her, for most of that time, that the extraordinary pain she was suffering was psychosomatic rather than physical in nature. Despite its disdain, however, the court acknowledged that the FTCA prohibits punitive damages and specifically noted that it was not awarding punitive damages. We decline to conclude that the district court made these statements gratuitously or in an effort to shield its decision from reversal.] (emphasis added)

860 F.2d at 1263. In light of Wheat, a court does not render its rulings automatically suspect by discussing a defendant's actions in very direct terms, even to the point of expressing "disdain" for, or "disgust" with, the actions of VA physicians.

In the case at bar, the plaintiff did not seek punitive damages; this Court did not award punitive damages. To the contrary, in ruling on the plaintiff's claims, this Court made it clear that there was no design to punish the United States for its actions.

> Now this Court wants this record to be perfectly clear. Although this Court has voiced concern about the manner in which the VA treated Ms. Busfield, that plays no role in the award of pain and suffering other than the pain and suffering she in fact did suffer. Ms. Busfield has undergone four separate Z-plasty surgeries or procedures with a total of 11 or 12 Z-plasty procedures contained within it. She's going to be looking at another surgery and another skin graft. The photographs are self-explanatory as to the horror of the injury she sustained. The screaming on the tape is quite compelling. She underwent procedures without anesthesia at the VA

or without adequate anesthesia at the VA. She went through periods of time where she could not open her mouth. . . . This lady has undergone and will undergo horrific amounts of pain and suffering and mental anguish, and that would be the case if the VA had acted politely and wonderfully and solicitously of her, but nonetheless had engaged in such conduct that this occurred. So the VA's conduct has nothing to do with the pain and suffering other than having caused the condition, in doing the punch culture the way they did and doing the steroid injections the way they did.[6]

Thus, this Court has made as clear as possible that the damages award was driven by Ms. Busfield's pain and suffering, physical scarring and disfigurement, physical impairment, as well as the ongoing anxiety and psychological conditions caused and/or exacerbated by her injuries. The Government has twice acknowledged this Court's declaration that the damages were linked to Ms. Busfield's pain and suffering rather than the actions of the Veterans Administration.[7]

Nonetheless, the Government claims that the damage award is punitive in nature because of this Court's "harsh admonitions to the United States." The Government has not identified the "harsh admonitions" it finds to be objectionable or evidence of an "extreme passion or prejudice" on the part of this Court. Although this Court was clear as to its grave concern as to the Veterans Administration's conduct, that concern played no role in its award of damages to Ms. Busfield. Ms. Busfield's extreme physical and psychological damages, injuries and pain and suffering constitute the basis for this Court's award. Once again, the Government's failure to cite to the Court any factual basis or reasoning behind its conclusory statements, makes it impossible for this Court to determine the Government is entitled to the relief it seeks. The Government's suggestion that the compensatory damages award are punitive in nature is rejected.

---

[6] Transcript, Court's Ruling in Bench Trial, at 81-82.

[7] Memorandum in Support of Motion for New Trial, at 3, 6.

## CONCLUSION

For the foregoing reasons, the United States' Motion for New Trial shall be denied in its entirety.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this ___ day of July, 2005.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

COPY SENT
DATE 7.19.05
BY
TO Hanna
    Drago
    Vincent